## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DARRYL K. WISE,                                      *

Plaintiff,                                           *

v                                                    *        Civil Action No. JKB-21-473

CLEVELAND FRIDAY, *Warden,*                          *
CHRISTOPHER SMITH, *Asst. Warden,*
JOHN DOE, *Chief of Security – DPSCS/JCI,*           *
CO II JOHN DOE, *HUD – DPSCS/JCI,*
JOHN DOE, *Chief Duty Officer – DPSCS/JCI,*          *
JESSUP CORRECTIONAL INSTITUTION,
                                                     *
Defendants.

*****

## MEMORANDUM OPINION

Self-represented Plaintiff Darryl K. Wise, an inmate presently incarcerated at Maryland Correctional Institution – Hagerstown, filed the above-captioned 42 U.S.C. § 1983 civil rights action against Jessup Correctional Institution ("JCI") and five "John Doe" Defendants at JCI, namely the Warden, Assistant Warden, Chief of Security, Chief Duty Officer, and a correctional officer. ECF No. 1. Plaintiff alleges that Defendants failed to provide medical care in a timely manner after he suffered from smoke inhalation during a fire that occurred while he was housed at JCI. *Id.* at 5-6. He seeks compensatory and punitive damages. *Id.* at 4.

Service was accepted on behalf of Defendants JCI, Warden Cleveland Friday, and former Assistant Warden Christopher Smith (collectively, the "JCI Defendants"),[1] all of whom filed a joint Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 14. Plaintiff opposed that Motion. ECF No. 17. The Motion is fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the JCI

---

[1] The Clerk shall amend the docket to replace Warden John Doe with Warden Cleveland Friday and Assistant Warden John Doe with Assistant Warden Christopher Smith.

Defendants' Motion shall be granted.  As the remaining John Doe Defendants were neither identified nor served with the Complaint, the claims against them shall be dismissed without prejudice.

## Background

Plaintiff states that on June 9, 2020, he was housed in the top tier of Housing Unit D-C in JCI when two separate fires broke out in the bottom tier. Compl., ECF No. 1 at 3, 5.  According to Plaintiff, the fires were set by "rebellious inmates who also engaged in a series of alleged assaults on JCI correctional staff." *Id.* at 5.  Plaintiff acknowledges this was an unsafe situation, with the tier being compromised by fire and uncontrollable violence. *Id.*  Although he initially claims that he was "never provided any medical assistance or emergency help for the smoke inhalation he endured and encountered," he later states that he "eventually was taken to the JCI medical unit." *Id.*  Specifically, he avers that he "only received emergency medical attention after an hour had lapsed." *Id.* at 6.  Plaintiff claims that as a result of the incident, he continued to suffer and endure acute post-traumatic stress disorder, depression, anxiety, and emotional distress. *Id.* at 5.

The JCI Defendants state that Plaintiff requested and received an unscheduled Sick Call two days later on June 11, 2020, with a registered nurse at JCI who noted his complaints of a cough, chest pain, sore throat, and eye irritation from the fire. Med. Records, ECF No. 14-2 at 10. The nurse documented Plaintiff's vitals and noted that his breathing was even and unlabored, and he was not in acute distress. *Id.*  Plaintiff was given lozenges for his sore throat before being sent back to his housing unit. *Id.*

On June 19, 2020, Plaintiff filed a Request for Administrative Remedy ("ARP"), complaining that he fell unconscious in his cell during the fires before JCI staff came to his aid over an hour later.  ARP, ECF No. 14-2 at 4-5.  Following an investigation into the matter, the

investigator found that "[d]ue to the unsafe nature of the tier [during the fires] all of the inmates were not able to be escorted to the medical unit in a timely fashion." ARP Summary, ECF No. 14-2 at 8. The investigator thus concluded that the claim was meritorious in part because "although Inmate Wise was eventually medically evaluated for a symptom other than what he claimed to have been suffering from, staff did an unsatisfactory job with getting him to the medical unit in a timely fashion." *Id.* Subsequently, Warden Friday adopted the investigator's recommendation and advised staff to ensure that inmates are medically evaluated in a timely manner during emergency situations. ARP Response, ECF No. 14-2 at 6. No further action was taken. *Id.*

On September 2, 2020, Plaintiff appealed Warden Friday's decision to the Commissioner of Correction, arguing that the Warden failed to address his remedies despite finding his claim meritorious in part. ARP Appeal, ECF No. 14-2 at 2. On October 26, 2020, the Commissioner dismissed the appeal, finding that although the Warden acknowledged the delay in receiving medical attention, Plaintiff was eventually examined by medical staff and thus no compensation would be awarded. ARP Appeal Response, ECF No. 14-2 at 3.

### Standard of Review

The JCI Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated

3

as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Adams Hous., LLC v. The City of Salisbury, Md.*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Here, the JCI Defendants filed a Motion titled "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and submitted additional materials in support. Therefore, Plaintiff was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations

omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Discussion

### I.    JCI

As a preliminary matter, JCI is not a "person" subject to suit under 42 U.S.C. § 1983[2] and, therefore, Plaintiff's claims against it must be dismissed. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002).  A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civ. No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").  Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a

---

[2] That section states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. §1983 (emphasis added).

person, and JCI is not a person within the meaning of the statute. Thus, Plaintiff's claims against JCI shall be dismissed.

**II.     Eleventh Amendment**

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. Accordingly, the JCI Defendants are immune from suit for actions taken in their official capacities.

**III.     Eighth Amendment**

Plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, are based on his Eighth Amendment right to be free from cruel and unusual punishment. To sustain an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, (1) objectively, the prisoner was suffering from a serious medical need and that, (2) subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

6

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Here, Plaintiff's claims center on JCI staff's failure to transport him to the medical unit for evaluation in a timely manner, and the fact that they did so only after he was rendered unconscious. ECF No. 1. Although Plaintiff summarily asserts in his opposition response that there is a genuine dispute of material facts, ECF No. 17 at 4, the Court concludes otherwise. Based on Plaintiff's Complaint and the JCI Defendants' Motion, it is clear that following the start of the fires, over an hour elapsed before Plaintiff was taken for a medical evaluation. Viewing this evidence in the light most favorable to Plaintiff, the Court cannot find that the JCI staff were deliberately indifferent to Plaintiff's needs.

Even assuming that, objectively, Plaintiff was suffering from a serious medical condition, the JCI staff were not subjectively reckless in responding to the situation. As Plaintiff himself recalls, the incident created an unsafe situation, with the "tier being compromised with fire and

7

uncontrollable violence." ECF No. 1 at 5. Thus, it does not appear that the JCI staff's actions amounted to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Plaintiff was taken to the medical unit about an hour later, was evaluated, and was seen for another visit two days later. From the medical records, it does not appear that the one-hour delay in receiving treatment exposed Plaintiff to a serious or significant injury. *See Brown v. Comm'r of Cecil Cnty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent"). In sum, Plaintiff has not shown that the JCI staff exhibited a callous disregard for his serious medical need. *See Estelle*, 429 U.S. at 105-06.

To the extent Plaintiff alleges that JCI staff failed to protect him, *see* ECF No. 1 at 6, his claim fares no better. To establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834). To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Having already determined that JCI staff were not deliberately indifferent, the JCI Defendants are entitled to summary judgment on this claim.

8

## IV.   Respondeat Superior

Plaintiff makes no direct allegations against Warden Friday and Assistant Warden Smith. Instead, it appears that he seeks to hold these Defendants liable for the actions of their employees. It is well established, however, that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Plaintiff has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by JCI employees. As discussed above, Plaintiff failed to show that his Eighth Amendment rights were violated in connection with this incident. Moreover, he acknowledges that Warden Friday found his ARP to be meritorious in part

9

and advised JCI staff accordingly.  In light of this record, Plaintiff has necessarily failed to demonstrate that Warden Friday and Assistant Warden Smith authorized or were indifferent to any constitutional violation.

Furthermore, Plaintiff's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability.  *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse.").  In his pleadings, he does not assert that this issue was part of a recurring problem at JCI and, as previously noted, he does not dispute that he was eventually brought to the medical unit.  Therefore, Warden Friday and Assistant Warden Smith are entitled to summary judgment on this ground as well.

### Conclusion

The JCI Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment is granted.  Plaintiff's claims against JCI are dismissed, and judgment is granted in favor of Defendants Warden Friday and Assistant Warden Smith.  Plaintiff's claims against the remaining John Doe Defendants are dismissed without prejudice.

A separate Order follows.

Dated this 23 day of _December_, 2021.

FOR THE COURT:

James K. Bredar
Chief Judge

10